**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FAMILY WATCHDOG, LLC,**
        **Plaintiff,**

-vs-                                                  **Case No. 6:09-cv-296-Orl-28GJK**

**LESTER SCHWEISS, a/k/a Innovates,
Inc., SAHRA SCHWEISS, THE
NATIONAL ALERT REGISTRY, INC.,
CYBERSPACE TO PARADISE, INC.,**
        **Defendants.**
_____/

# ORDER

Plaintiff, Family Watchdog, LLC, brings this action against four Defendants, alleging trademark infringement under the Lanham Act as well as eight other counts. The case is currently before the Court on the Motion to Dismiss (Doc. 11) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction filed by two of the Defendants, Lester Schweiss and Sahra Schweiss (collectively, "the Schweiss Defendants") and the Motion to Dismiss (Doc. 30) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted filed by the other two Defendants, National Alert Registry, Inc. ("NAR") and Cyberspace to Paradise, Inc. ("Cyberspace) (collectively, "the Florida Defendants").

## I. Background

Plaintiff is an Indiana limited liability company with its principal place of business in Carmel, Indiana. (Compl. ¶ 1). Defendants National Alert Registry, Inc. ("NAR") and

Cyberspace to Paradise, Inc. ("Cyberspace") are identified in the Complaint as Florida corporations with their principal places of business in DeLand, Florida. (Id. ¶¶ 6-7). Defendants Lester Schweiss and Sahra Schweiss are residents and citizens of the state of Missouri.[1] (Id. ¶¶ 2-3; Doc. 11 at 1).

Plaintiff alleges in the Complaint that it is the owner of a United States trademark registration for the mark FAMILY WATCHDOG and that it has used the mark continuously in interstate commerce since June 7, 2005. (Compl. ¶¶ 12 & 15). Plaintiff describes itself as "offer[ing] to the public—at no cost—a national sex offender registry and notification service via its website FAMILYWATCHDOG.US" and as "the most visited resource on the Internet for information about registered sex offenders in the United States." (Id. ¶ 11).

Plaintiff alleges that in January 2005, Innovates, Inc. ("Innovates"), a former Wyoming corporation owned by the Schweiss Defendants,[2] "fraudulently registered the domain names

---

[1] In the Complaint, Plaintiff initially alleges that the Schweiss Defendants are residents of Montana. (See Doc. 1 at 1). However, two paragraphs later, Plaintiff identifies these Defendants as residents of Missouri rather than Montana. (See id. at 1-2). The Schweiss Defendants identify themselves as citizens of Missouri, and the Court assumes that the initial identification of Montana as the home state of these Defendants is attributable to clerical error.

[2] The Complaint describes Innovates as "at one time, a Wyoming corporation, with its principal place of business located in Bridgeton, Missouri. However, upon information and belief, Innovates was administratively dissolved as a Wyoming corporation in 2004 and has not been reinstated by the State of Wyoming or any other jurisdiction, and may not be currently operating." (Compl. ¶ 4). Further, "[u]pon information and belief, Lester and Sahra [Schweiss] were the owners of Innovates and, depending upon whether or not Innovates currently exists, could still be the owners of Innovates." (Id. ¶ 5).
Plaintiff has listed Innovates, Inc. in the case caption as an "a/k/a" of Defendant Lester Schweiss. (See id. at 1). However, the introductory paragraph of the Complaint refers to claims against Innovates (see id.), and the allegations within the individual counts of the Complaint refer to Innovates separately from Schweiss. (See, e.g., id. ¶¶ 63, 73, & 83

FAMILYWATCHDOG.COM, FAMILYWATCHDOG.ORG and FAMILYWATCHDOG.NET on the GoDaddy.com registrar," with the latter two websites set up to act as "feeder sites" to the first. (Id. ¶¶ 4-5, 24-25). According to the Complaint, prior to Plaintiff's use of the FAMILY WATCHDOG mark in commerce on June 7, 2005, Defendants' FAMILYWATCHDOG.COM site "showed only pages referencing home computer security, offering no goods or services, and otherwise did not conduct any business that provided any goods or services in the stream of commerce." (Id. ¶ 26). Moreover, before that date, "the mark FAMILY WATCHDOG was not in use on any of the Defendants' FAMILYWATCHDOG.COM, FAMILYWATCHDOG.ORG or FAMILYWATCHDOG.NET websites in connection with sexual offender registration and notification services," and these sites "received negligible web traffic." (Id. ¶¶ 27-28).

On October 12, 2005, Defendant Lester Schweiss emailed Plaintiff and indicated a desire to sell the FAMILYWATCHDOG.COM, FAMILYWATCHDOG.ORG and FAMILYWATCHDOG.NET domain names to Plaintiff. (Id. ¶ 29). Plaintiff declined Lester Schweiss's offer to sell the domain names for $80,000 but made a counteroffer a month later; Defendant Lester Schweiss did not respond to the counteroffer. (Id. ¶¶ 30 & 32). On approximately October 31, 2005, four days after Plaintiff was featured on *The Oprah Winfrey Show*, Lester Schweiss "and/or Innovates began using the FAMILYWATCHDOG.COM

---

(referring to "Schweiss'[s], Sahra's, Innovates'[]s, NAR's and Cyberspace's unlawful actions")). According to the docket, however, no summons was issued as to Innovates. (See February 20, 2009 unnumbered docket entry). Thus, it appears that Plaintiff is not pursuing Innovates as a separate Defendant in this case. In any event, the Court's conclusion regarding personal jurisdiction over the Schweiss Defendants applies with at least as much force to Innovates.

domain name and their website in connection with advertising sexual offender registration and notification services to the public." (Id. ¶ 33). Then, on March 3, 2006—the day after Plaintiff and its President, Steve Roddel, were featured on *The O'Reilly Factor*—Lester Schweiss "and/or Innovates added a prominent banner to [the] FAMILYWATCHDOG.COM domain name website linking to [Defendant] NAR, a direct competitor of [Plaintiff], which attempts to offer virtually the same sex crime registry and notification services to the public at a cost[] as the registry and notification services that [Plaintiff] provides the public at no cost." (Id. ¶ 34).

Plaintiff contends that Defendant "Cyberspace solicited [Lester] Schweiss and/or Innovates to place the NAR banner advertisement and link to the NAR website because consumers were already mistakenly linking from the FAMILYWATCHDOG.COM website to the NAR website through relatively small Google ads placed on the FAMILYWATCHDOG.COM website" and that "[t]he placement of a large banner advertisement and link to the NAR website was intended by Defendants to create more confusion and lead more consumers seeking [Plaintiff's] familywatchdog.us site to mistakenly link to the NAR website thereby generating additional income to NAR and/or Cyberspace." (Id. ¶ 36). In March 2006, ownership of the FAMILYWATCHDOG.COM, FAMILYWATCHDOG.ORG, and FAMILYWATCHDOG.NET domains was transferred from Innovates to Lester Schweiss. (Id. ¶ 37).

On May 22, 2006, Plaintiff was featured on *The Dr. Phil Show*. (Id. ¶ 18). The next day, Lester "Schweiss and/or Innovates held themselves out as [Plaintiff] and unscrupulously and tortiously converted Family Watchdog's trademark and good will by placing a statement

-4-

on the main page of the FAMILYWATCHDOG.COM website stating[,] 'Due to mention on Dr. Phil, servers are overloaded. If the page fails to load, keep trying.'" (Id. ¶ 38).

Plaintiff alleges that "Defendants have no consent, license[,] or approval or other authorization from [Plaintiff] to use, directly or indirectly, or by action in concert with any direct trademark infringer, the FAMILY WATCHDOG mark in association with sexual offender registration and notification services." (Id. ¶ 44). Further, the Complaint asserts that "Defendants have adopted and used the FAMILY WATCHDOG mark with the willful intent to cause confusion and mistake and to deceive consumers as to the affiliation, connection or association of the Defendants to the FAMILY WATCHDOG mark and to [Plaintiff]." (Id. ¶ 45).

The Complaint further alleges that "[o]n or about January 16, 2008, [Lester] Schweiss filed an application with the United States Patent and Trademark Office (the 'USPTO') seeking to register the trademark . . . , 'FAMILYWATCHDOG.COM,'" stating in the application that the purpose for the trademark was "providing an interactive website featuring information in the field of computer, computer network, and internet safety and security; Computer consultation in the field of computer, computer network, and internet safety and security." (Id. ¶ 50). Additionally, on January 9, 2008, Lester Schweiss had filed a petition with the USPTO to cancel Plaintiff's trademark registration. (Id. ¶ 51).

On or about February 6, 2008, Plaintiff filed a complaint against Lester Schweiss with the World Intellectual Property Organization ("WIPO"), requesting that an administrative panel rule that the FAMILYWATCHDOG.COM, FAMILYWATCHDOG.ORG, and FAMILYWATCHDOG.NET domain names be transferred to Plaintiff. (Id.). In his March 28,

2008 Response to that complaint, Lester Schweiss acknowledged that he may have benefited and even taken advantage of confusion between his domain names and Plaintiff's trademark. (Id. ¶ 53). On April 23, 2008, a lone WIPO panelist denied Plaintiff's complaint on the basis that the domain name dispute "is ancillary to the trademark, unfair competition, and other trade related disputes between the Parties" and that "[s]uch disputes are more appropriately decided by traditional means." (Id. ¶ 54). Just five days later, the USPTO, meanwhile, refused to register Lester Schweiss's proposed FAMILYWATCHDOG.COM mark, noting that the proposed mark was practically identical to Plaintiff's registered mark. (Id. ¶¶ 55-56).

Plaintiff filed this suit on February 13, 2009 (Doc. 1), just eight days after a federal district court in the Southern District of Indiana granted motions to dismiss for lack of personal jurisdiction filed by all of the Defendants, (see Order, Ex. C to Doc. 11). In the Complaint, Plaintiff asserts nine counts: "Demand for Preliminary and Permanent Injunction Pursuant to 15 U.S.C. §§ 1114, 1116, 1117, 1118, and 1125" (Count I); Trademark Infringement Pursuant to 15 U.S.C. § 1114 (Count II); Cybersquatting Pursuant to 15 U.S.C. § 1125(d) (Count III); False Designation of Origin, False Descriptions, and Unfair Competition Under 15 U.S.C. § 1125(a) (Count IV); Dilution by Blurring Pursuant to 15 U.S.C. § 1125(c) (Count V); Actual Fraud (Count VI); Common Law Trademark Infringement (Count VII); Common Law Unfair Competition (Count VIII); and Contributory Trademark Infringement (Count IX).

The Complaint does not indicate in the count headings which counts are brought against which Defendants. However, it appears from the allegations within the counts that

Counts I, II, IV, V, VII and VIII are against all of the named Defendants; Count III is against the Schweiss Defendants and Innovates only; Count VI is against Lester Schweiss and Innovates only; and Count IX is against NAR and Cyberspace only. The only allegation in the Complaint regarding personal jurisdiction states: "This court has personal jurisdiction over the Defendants due to their acts of direct or contributory trademark infringement and other unlawful acts which have caused injury in this district to Family Watchdog and its FAMILY WATCHDOG trademark." (Compl. ¶ 9).

## II. Discussion

### A. The Schweiss Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). First, the court "must examine the jurisdictional issue under the state long-arm statute." Id. Second, the court "must ascertain whether or not sufficient minimum contacts exist to satisfy the Due Process Clause . . . so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (citations and internal quotations omitted). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

"The plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009). "The defendant then

must 'raise[], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction.'" Id. (quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)) (alteration in original). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" Id. (quoting Sculptchair, 94 F.3d at 627).

### 1. State Long-Arm Statute

Florida's long-arm statute provides that a non-resident submits itself to the jurisdiction of the courts of this state by, inter alia, "[c]ommitting a tortious act within this state." § 48.193(1)(b), Fla. Stat. Last year, the Eleventh Circuit held—in a case involving a claim of trademark infringement arising from a website that was created outside of the state—that trademark infringement "occurred in Florida by virtue of the website's accessibility in Florida" and that section 48.193(1)(b) was thereby satisfied. Licciardello v. Lovelady, 544 F.3d 1280, 1283-84 & n.2 (11th Cir. 2008).[3] The website at issue in the instant case was—like, presumably, most, it not all, websites—accessible in Florida. Thus, under the binding Licciardello decision,[4] Florida's long-arm statute is satisfied here.

---

[3] In making this statement, the Eleventh Circuit found it unnecessary to decide the issue of "whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held." 544 F.3d at 1283. Of course, in the instant case the alleged owner of the mark, Family Watchdog, is not a Florida resident but instead hails from Indiana.

[4] In their motion to dismiss, the Schweiss Defendants candidly acknowledge the Licciardello decision. (Doc. 11 at 3-4). They state that "[a]lthough the Eleventh Circuit's language in Licciardello seems to imply that mere accessibility of a website in Florida is enough to satisfy Florida's long-arm statute, Defendants believe that this was not the court's intention." (Id.). The Schweiss Defendants then note that "[i]f the mere accessibility in Florida of a website containing an allegedly infringing trademark is all that is required to

## 2. Constitutional Limitations

"[D]ue process requires . . . that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: they 'must be related to the plaintiff's cause of action or have given rise to it'; they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and they 'must be such that the defendant should reasonably anticipate being haled into court there.'" Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007) (quoting McGow v. McCurry, 412 F.3d 1207, 1214 (11th Cir. 2005)).

The Schweiss Defendants assert that they do not have sufficient minimum contacts with the state of Florida to render the exercise of jurisdiction over them constitutionally permissible. They acknowledge their operation of the familywatchdog.com, familywatchdog.net, and family watchdog.org websites, but they emphasize the fact that

---

invoke Florida's long-arm statute, then Defendants concede the point since their website is accessible in Florida." (Id. at 4).

Although this Court is not unsympathetic to Defendants' argument as to the broad ramifications of Licciardello, this district court, along with others within this circuit, is bound to follow the plain holdings of the Eleventh Circuit Court of Appeals without regard to "intention." This Court is unable to parse the Licciardello decision to overcome the statement that website accessibility equates to occurrence of trademark infringement at the situs of that accessibility. See also Biologics, Inc. v. Wound Sys., LLC, No. 8:09-cv-362-T-24 TGW, 2009 WL 997239, at *3 (M.D. Fla. Apr. 14, 2009) (broadly restating the Licciardello holding as "[a]ny infringement occurring on the internet occurs in Florida if it is accessible in Florida").

these websites are not specifically targeted or directed to any resident of Florida. The Schweiss Defendants also note that consumers cannot transact business or purchase anything via the websites; instead the websites are passive and just happen to be accessible over the Internet wherever an Internet user is located. They also rely on the fact that the district court in Indiana where Plaintiffs initially filed suit found that it lacked personal jurisdiction over the Schweiss Defendants, and they contend that this Court even more plainly lacks jurisdiction over them.[5] In support of their motion to dismiss, the Schweiss Defendants have submitted their own affidavits regarding their lack of contacts with Florida and a copy of the Indiana federal district court order granting their motion to dismiss based on lack of personal jurisdiction. (Exs. A-C to Doc. 11).

In their motion, the Schweiss Defendants do not mention the activity upon which Plaintiff relies in its Response in asserting that they are subject to jurisdiction in Florida—the relationship between the Schweiss Defendants and the Florida Defendants, NAR and Cyberspace. Plaintiff urges that the Schweiss Defendants have sufficient contacts with the state of Florida because "they have placed a prominent advertisement for NAR with a link to NAR's website on the [i]nfringing [w]ebsites and . . . receive a commission from the Florida Defendants for each purchase made by consumers that link from the [i]nfringing [w]ebsite to the NAR website in Florida." (Doc. 22 at 9). Plaintiff asserts that "[t]hese transactions are commercial in nature and constitute doing business in Florida," characterizing NAR as

---

[5]This Court expresses no opinion on whether it agrees with the decision of the Indiana district court regarding whether the exercise of jurisdiction over the Schweiss Defendants in Indiana would be appropriate.

-10-

merely a "middleman" used to complete the business transaction. (Doc. 22 at 9).

In support of its response, Plaintiff has submitted excerpts from a deposition of Lester Schweiss taken in the Indiana case (Ex. A to Doc. 22); an email exchange between counsel with an "HD Publishing Group Affiliate" agreement attached (Ex. B to Doc. 22); two emails from Lester Schweiss to Plaintiff (Exs. C & D to Doc. 22); and a copy of the Response filed by Lester Schweiss in proceedings before the World Intellectual Property Organization Arbitration and Mediation Center (Ex. E to Doc. 22). However, only the first two of these—the Schweiss deposition and the "HD Publishing Group Affiliate" agreement—pertain in any way to the issue of whether personal jurisdiction may be exercised over the Schweiss Defendants by this Court.[6]

Plaintiff has not met its burden of establishing that the Schweiss Defendants have sufficient minimum contacts with the state of Florida to satisfy due process. Although the Schweiss Defendants' alleged contacts with the Florida Defendants—and thus, Florida—are "related to the plaintiff's cause of action" because the claims are based, at least in part, on the posting of the link to the Florida Defendants' website on the Schweiss Defendants' website, there is no basis from which the Court can conclude that the contacts "involve

---

[6]The other exhibits do not pertain to any contacts with Florida. The emails (Exs. C & D) pertain to Lester Schweiss's offers to sell his domain names to Plaintiff. In the second email, Schweiss mentions that he has "very good connections in the state of Florida" and then explains that his brother was, at the time, the press secretary for then-Governor Jeb Bush; had previously worked at television stations in Tampa, Orlando, and Tallahassee; and "knows anybody who is anybody in the state of Florida." (Ex. D to Doc. 22). Schweiss's description of his brother's activities and connections in Florida does not, however, shed light on or relate to the connections, if any, that Schweiss himself has to the state. Finally, the Response that Lester Schweiss filed in the WIPO proceeding does not bear on the personal jurisdiction issue but on the merits of the case.

'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum.'"

Plaintiff has not provided evidence showing or even tending to show that the Schweiss Defendants purposefully availed themselves of the privilege of conducting activities with Florida. The Court rejects Plaintiff's contentions that the Schweiss Defendants are "doing business in Florida" through their acceptance of NAR's advertisement on their website and that NAR is a mere "middleman." While the Schweiss Defendants may have an agreement regarding the posting of NRA's ad, that arrangement does not render NRA their "middleman" or amount to "doing business in Florida" in and of itself. And, although Plaintiff contends that "[t]he Schweiss Defendants receive approximately $65,000 per year from Cyberspace for the NAR banner ad on their [i]nfringing [w]ebsites," (Doc. 22 at 4), in the deposition testimony cited for this proposition Lester Schweiss was asked whether it was correct that his "website generates approximately $65,000 a year" and he answered "yes"; there is nothing tying this revenue to Florida. (Ex. A to Doc. 22, at 199). Even if there were such a tie, it would not constitute "purposeful availment."

Significantly, Plaintiff alleges in the Complaint that Cyberspace solicited Lester Schweiss regarding placing an ad on the website, (see Compl. ¶ 36), and indeed, in the deposition excerpt submitted by Plaintiff Lester Schweiss states that the Florida Defendants contacted him, not the other way around, (see Lester Schweiss Dep. at 124 ("They [NAR and Cyberspace] contacted me and made a good offer for advertisement . . . ."); see also id. at 97 ("[T]hat's how they said they found me.")). No other contacts with Florida have been

identified by Plaintiff to contradict the Schweiss Defendants' denials of such contacts.[7]

Moreover, the contract that Plaintiff presents as memorializing the arrangement between the Schweiss Defendants and the Florida Defendants for the posting of the banner ad on the allegedly infringing websites (Ex. C to Doc. 22) does not even name the Florida Defendants at all. Instead, the agreement refers to an entity called "HD Publishing Group," which is not a Defendant in this case and the citizenship of which is apparently unknown.[8] And, although the agreement states that jurisdiction for its enforcement "shall be the state of Florida" and that it "shall be governed by the laws of the state of Florida," these provisions alone are not sufficient to provide the requisite "purposeful availment." Cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 481-82 (1985) (noting that choice-of-law provision "standing alone would be insufficient to confer jurisdiction" but finding that personal jurisdiction in Florida was supported by circumstances of case, including "20-year interdependent relationship" between defendant and Miami headquarters of plaintiff).

In sum, then, at best Plaintiff has presented evidence that there is an agreement

---

[7] The Schweiss Defendants state in their affidavits that they "have never directly solicited business within the State of Florida." (Lester Schweiss Aff. ¶ 5; Sahra Schweiss Aff. ¶ 5). Moreover, Sahra Schweiss states that she has "never been contacted by any resident of Florida for business purposes" (Sahra Aff. ¶ 6), while Lester Schweiss states that "[a]part from [the Florida Defendants, he has] never been contacted by any resident of Florida for business purposes" (Lester Aff. ¶ 6).

[8] In its response to the Schweiss Defendants' motion to dismiss, Plaintiff states that "[t]he Schweiss Defendants are paid by Cyberspace for the . . . banner ad . . . pursuant to an agreement with HD Publishing Group." (Doc. 22 at 3). Then, in a footnote, Plaintiff attempts to explain: "The relationships between NAR, Cyberspace and HDPG are complicated and discovery will be necessary for [Plaintiff] to fully understand the connections." (Id. n.2).

between the Schweiss Defendants and an entity that is apparently somehow related to the Florida Defendants.  The evidence presented by Plaintiff itself, however, shows that that agreement was the result of the Florida Defendants or some other entity contacting the Schweiss Defendants, not the Schweiss Defendants purposefully reaching into Florida to make a business deal.  The contract provisions alone are not sufficient to support a finding of the constitutionally requisite minimum contacts with the state of Florida.  Thus, the Schweiss Defendants' motion to dismiss for lack of personal jurisdiction must be granted.

### B.  The Florida Defendants' Motion to Dismiss for Failure to State a Claim

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

In their motion to dismiss, the Florida Defendants raise various arguments for dismissal of the claims against them.  However, a fundamental problem with the Complaint requires its dismissal—Plaintiff's Complaint is a shotgun pleading.  "In shotgun style

pleading, the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief. Neither [the appellate court] nor the district court is required to parse the complaint searching for allegations . . . that could conceivably form the basis of each of [the plaintiffs'] claims." Ferrell v. Durbin, 311 F. App'x 253, 259 (11th Cir. 2009). The Complaint in this case does not connect its factual allegations to its counts; instead, it incorporates all factual allegations into each count and then alleges that the Defendants' actions—often lumping all Defendants together—constitute various legal violations. (See, e.g., Compl. ¶¶ 86 & 87 (providing, respectively, that "[Plaintiff] incorporates paragraphs 1 though 59 of this Complaint" and that "Schweiss'[s], Sahra's, Innovates', NAR's and Cyberspace's unlawful actions constitute willful unfair competition")).

The Eleventh Circuit Court of Appeals has instructed that "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*" because "shotgun pleadings 'wreak havoc on the judicial system' and 'divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.'" Ferrell, 311 Fed. App'x at 259 n.8 (quoting Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006)). Accordingly, the Court will sua sponte dismiss the Complaint as a shotgun pleading and allow Plaintiff to file an amended complaint against the Florida Defendants.[9]

### III. Conclusion

---

[9]Moreover, on repleading, Plaintiff shall take note that Count I of the Complaint does not state a cause of action but instead requests a form of relief without setting forth an underlying claim.

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Dismiss (Doc. 11) for lack of personal jurisdiction filed by Defendants Lester Schweiss and Sahra Schweiss is **GRANTED**. The claims against these Defendants are **DISMISSED** without prejudice to Plaintiff pursuing them in another jurisdiction.

2. Because the Complaint is a shotgun pleading that incorporates all factual allegations into each count without specifying which facts form the basis of each count and lumps the actions of the Defendants together in setting forth each count, the Complaint is **DISMISSED without prejudice**. Plaintiff may file an amended complaint restating its claims against Defendants National Alert Registry, Inc. and Cyberspace to Paradise, Inc. **on or before Friday, July 31, 2009**. **Failure to file an amended complaint by this deadline will result in dismissal of all claims with prejudice without further notice**.

3. The Motion to Dismiss (Doc. 30) for failure to state a claim filed by Defendants National Alert Registry, Inc. and Cyberspace to Paradise, Inc. is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida this 13th day of July, 2009.

Copies furnished to:
Counsel of Record
Unrepresented Party

JOHN ANTOON II
United States District Judge